IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

|  |  |
|---|---|
| ADi MOTORSPORTS, INC., f/k/a <br> AMERICAN DETAIL, INC., d/b/a <br> ADi MOTORSPORTS <br><br> Plaintiff, <br><br> v. <br><br> TIMOTHY L. HUBMAN, <br> THE HUBMAN FOUNDATION, <br><br> AND <br><br> MARIA LANKINA, <br><br> Defendants. | Case No. 4:06CV00038 <br><br> **MEMORANDUM OPINION** <br><br> By: Jackson L. Kiser <br> Senior United States District Judge |

Before me now is Defendant Maria Lankina's ("Defendant") Motion to Dismiss for Lack of Jurisdiction("Motion to Dismiss ") against Plaintiff ADi Motorsports Inc. ("Plaintiff"). In addition, Plaintiff's Motion to Compel Maria Lankina to Identify Who is Assisting Her with Her Pro Se Filings ("Motion to Compel") is also before this Court. Oral arguments have been not been heard at the request of the parties. For the reasons stated herein, Defendant's Motion to Dismiss is **GRANTED**. Plaintiff's Motion to Compel is **DENIED**. This case is **DISMISSED FROM THE DOCKET OF THIS COURT, WITH LEAVE FOR THE PLAINTIFF TO REINSTATE THE CASE IN ORDER TO ENFORCE THE INJUNCTION**.

**I. FACTUAL BACKGROUND**

Plaintiff ADi Motorsports, a Virginia Corporation, entered into a contract with Defendant Timothy Hubman and The Hubman Foundation on March 2, 2006. Plaintiff agreed to supply a

race car and support team to Defendant Hubman so that he could compete in the Grand American Rolex Sports Car Series of races. Defendant Hubman agreed to be the driver for the race team. Defendant Hubman arranged for his wife, Co-Defendant Lankina, to place decals for her businesses on the race car in three races in exchange for her photography services. This sponsorship by Defendant Lankina violated the rental contract Defendant Hubman had with Plaintiff. Defendant Hubman only participated in three of the fourteen races. The racing arrangement came to an end when Defendant Hubman failed to make payments according to the contract.

Defendant Lankina is a Florida resident who owns the businesses known as "M-L Lifestyles," "M-L Lifestyles.com," "marialankina.com," and "thesindiva.com." The Defendant is the registered holder of the fictitious name "ML" in Florida. These entities all relate to Defendant Lankina's career as a model, actress, and photographer. Defendant Lankina's business entities were advertised on the race car supplied by the Plaintiff in three races: one in Virginia, one in Florida, and one in California. The sponsorship decals were created and attached to the car in Virginia. Defendant Lankina is not otherwise known to have had any contacts with the Commonwealth of Virginia.

## II. PROCEDURAL HISTORY

Plaintiff brought suit against Defendants in this Court alleging claims of Breach of Contract, Bad Check, Breach of Oral Contract, and Fraud against Defendant Hubman alone; claims of Tortious Interference with Business Expectancy, Punitive Damages, and Civil Conspiracy against both Defendants; and a claim of Unjust Enrichment against Defendant Lankina alone. Plaintiff filed its complaint against Defendants on July 18, 2006. Summonses

2

were issued the next day to all Defendants and returned executed by July 20, 2006. I granted a partial default judgment against Defendants Hubman and The Hubman Foundation on August 15, 2006 but not against Defendant Lankina due to a lack of return of summons from her. On August 17, 2006, Defendant Lankina was served, with the summons returned executed to Plaintiff on August 30. On August 29, I ordered a Final Judgment against Defendants Hubman and The Hubman Foundation.

Defendant Lankina filed this Motion to Dismiss on September 1, 2006. Plaintiff responded to Defendant Lankina's motion on September 27, 2006 and filed an additional motion to compel her to reveal who is helping her to compile her *pro se* briefs.

### III. LEGAL STANDARD

    *A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may present a motion to dismiss for lack of subject matter jurisdiction in two different ways. *U.S. v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). First, the defendant may argue that the plaintiff's complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. If the defendant chooses this route, the facts alleged in the complaint are taken as true. *Id*. Alternatively, the defendant may argue "that the jurisdictional allegations of the complaint were not true." *Id*. When this is the case, the trial court "may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Id*. The defendant is ordinarily bound by the amount claimed by the plaintiff unless "it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed." *St. Paul Mercury Indem. Co. v.*

3

*Red Cab Co.*, 303 U.S. 283, 289 (1938). "Unless the claim for an amount over the jurisdictional prerequisite is made in bad faith, or unless it is plain from the complaint that an amount less than the jurisdictional amount is all that is at issue, the district court has jurisdiction over the case." *Shanaghan v. Cahill*, 58 F. 3d 106, 112 (4th Cir. 1995).

   B.  *Motion to Dismiss for Lack of Personal Jurisdiction*

When a defendant files a motion to dismiss the plaintiff's complaint for lack of jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff must prove jurisdiction by a preponderance of the evidence. *Mylan Laboratories, Inc. v. Akzo*, 2 F.3d 56, 59-60 (4th Cir. 1993). If material facts are in dispute, a court may either hold a pretrial evidentiary hearing or postpone resolution of the motion until trial. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Klockner-Pentaplast of America v. Roth*, 860 F.Supp. 1119, 1121 (W.D. Va. 1994). When a court declines to hold an evidentiary hearing and decides to rely on the parties' pleadings, affidavits, and other legal documents, the plaintiff faces a lesser standard such that the plaintiff only must "make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." *Combs*, 886 F.2d at 676. "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id*.

## IV. DISCUSSION

### A. *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Under Federal Rule of Civil Procedure 12(b)(1) Defendant Lankina challenges the Plaintiff's claim of diversity jurisdiction by arguing that the Plaintiff has not met the $75,000 jurisdictional amount required by 28 USCS § 1332(a). This argument must fail. In the Complaint, the Plaintiff alleged that Defendant Lankina received the benefit of advertising on the Plaintiff's race car in violation of the Rental Contract with Defendant Hubman for three races. Defendant Lankina claims that the Plaintiff was compensated by Defendant Hubman for at least one of these races. Defendant Lankina then claims that the damages stemming from the other two races, absent punitive damages, could not be over $75,000.00 and therefore the lawsuit should be dismissed.

I cannot say, to a legal certainty, that sponsorship on a race car is worth less than the $75,000 jurisdictional amount required by 28 USCS § 1332(a) even without punitive damages. "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indem. Co*, 303 U.S. at 289. Indeed, the Plaintiff has included an affidavit from Hassel J. Moran, the president of ADi Motorsports, that the minimum value for the advertisements on the race car is $25,000.00 per race. That alone would be $50,000.00 in controversy assuming, as the Defendant argues, that one of the three races should not count against her. Even if I were to further adopt Defendant's argument that punitive damages are unavailable in this case, the Plaintiff's damages for tortious interference with contract and civil conspiracy against Defendant Lankina could easily amount to more than $75,000.00.

5

### B. Motion to Dismiss for Lack of Personal Jurisdiction

Based on the information in the pleadings, and affidavits, Defendant Lankina does not have sufficient contacts with the Commonwealth of Virginia to support either general or specific personal jurisdiction. Defendant Lankina's contacts can be described briefly. The Complaint alleges that Defendant Lankina is a resident of Miami Beach, Florida and the sole proprietor of businesses known as "M-L Lifestyles," "M-L Lifestyles.com," "marialankina.com," and "thesindiva.com." Complaint, ¶4. The Defendant is the registered holder of the fictitious name "ML" in Florida. Complaint, ¶4. The Plaintiff further alleges "ADi and Hubman, in association with Lankina through her sponsorship of Hubman, transacted business or contracted to do business in the Commonwealth of Virginia, and/or have transacted business or contracted to supply services or goods in the Commonwealth of Virginia." Complaint, ¶7. The extent of Defendant Lankina's transaction of business is described in Paragraph 22 of the Complaint:

> At Hubman's insistence and request and with Lankina's assent and acknowledgment, ADi's BMW Picchio Daytona Prototype race car prominently bore the decals -- beyond the limited advertising space on the race car allowed under the Rental Contract -- more particularly, on the hood, approximately 150 square inches, and tail, approximately 360 square inches, of Lankina's business/businesses "M-L Lifestyles," "www.M-L Lifestyles.com" and/or "marialankina.com" at all races in which such vehicle was raced during the 2006 Series race season.

On April 23, 2006, the race car with the Defendant's logos attached was used in a race at the Virginia International Raceway. Complaint, ¶¶38-40.

Virginia's long arm statute has been construed to be limited only by due process, and thus the central inquiry here is whether either Defendant's contacts with the Commonwealth of Virginia confer personal jurisdiction within the limits of due process. Va. Code § 8.01-

328.1(A)(1); *Bassett Furniture Industries, Inc. v. Sexton*, 596 F. Supp. 454, 456 (W.D. Va. 1984). Due process requires that a non-resident defendant have sufficient "minimum contacts" with the forum state. *International Shoe Co. v. Washington*, 326 U.S. 310, 315-16 (1945). A non-resident defendant should be able to anticipate being haled into court as a result of contacts directed at the forum state, such as by purposely availing oneself with of the activities within the forum state that provide clear notice that one is subject to suit there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The plaintiff must show that either general or specific jurisdiction exists. General jurisdiction arises from a defendant's continuous and systematic contacts with the forum state such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 549 (E.D. Va. 2004). The threshold for establishing the sort of continuous and systematic contacts necessary for general jurisdiction is high. *ESAB Group v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997). Non residents are subject to general personal jurisdiction when they "are essentially domiciled within the forum state." *Corry v. CFM Majestic, Inc.*, 16 F. Supp. 2d 660, 663 (E.D. Va. 1998). The Plaintiff does not argue that this Court has general personal jurisdiction over Defendant Lankina. There are no allegations that she ever had systematic and continuous contacts with the Commonwealth of Virginia, let alone such contacts that would justify the exercise of jurisdiction without offending traditional notions of fair play and substantial justice. *Reynolds & Reynolds Holdings,* 301 F. Supp. 2d at 549.

This inquiry focuses on whether Defendant Lankina's transaction of business is sufficient to justify specific personal jurisdiction. Specific jurisdiction arises where continuous and

7

systematic contacts are absent, but sufficient contacts relating to the cause of action create a substantial connection with the forum state. *Id.* "In determining whether specific jurisdiction exists, the court considers (1) the extent to which the defendant has purposefully availed himself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). "The 'purposeful availment' requirement is satisfied when the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-476 (1985). Random, fortuitous or attenuated contacts are not sufficient to hale a defendant into a jurisdiction nor is the unilateral activity of another party or third person. *Id.* Instead, the defendant must deliberately engage in significant activities within the forum or create "continuing obligations" between himself and the forum's residents in order for the forum's jurisdiction over the defendant to be reasonable. *Id.*

      Defendant Lankina has not purposefully availed herself of the privilege of conducting activities within Virginia such that she could reasonably be subject to litigation in this forum. She had no offices or representatives of her business in Virginia. She has neither sold nor bought products from Virginia. She is only alleged to have purposefully availed herself of conducting business in Virginia by virtue of her logos appearing on a race car which competed in a race on April 23, 2006, at a race at the VIRginia International Raceway ("VIR") in Halifax County, Virginia. In addition, these advertising logos were made and attached to the car by ADi, a Virginia corporation. There is no allegation that Defendant Lankina intended for her

8

advertisements to appear at the Virginia race or to have these logos made in Virginia. Indeed, the allegations show that Defendant Lankina was aware that the race car bearing her advertisements was appearing in Florida and California, but there is no showing that she was aware that the car would race in Virginia or that she was purposefully directing her advertisements to a Virginia audience. While Defendant Lankina may have benefitted from her advertising exposure at the VIR race, such benefit is more random, fortuitous, and attenuated than purposeful. *Burger King*, 471 U.S. at 475.

The Plaintiff contends that Defendant Lankina's placement of advertisements which were made and attached in Virginia was the "creation of a de facto contractual relationship with ADi" and formed a "reasonable expectation of being haled into a court in Virginia if a dispute developed." I disagree. Neither the Complaint, the Motion, nor any attached affidavit allege any agreement between Defendant Lankina and a Virginia resident. Based on the allegations before me, Defendant Lankina agreed only with the driver, Defendant Hubman, to place advertisements on the race car. Defendant Hubman is, according to the Complaint, a Florida resident. Whether Defendant Lankina knew or should have known that the race car was owned by a Virginia corporation or that the logos were manufactured and attached in Virginia is immaterial. Her contract was with the driver, not the car. Certainly Defendant Hubman's signing and breaching the rental contact created an expectation on his part of being haled into court in Virginia, but the same cannot be said for Defendant Lankina who was not a party to the contract. "[U]nilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 417 (1984).

9

I next examine "whether the plaintiff's claims arise out of those activities directed at the state." *ALS Scan, Inc.*, 293 F.3d at 712. The Plaintiff's claims against Defendant Lankina are for tortious interference with business expectancy, civil conspiracy, and unjust enrichment. These claims are all rooted in the allegation that Defendant Lankina received the benefit of advertising on the Plaintiff's car without paying for the advertisement. The activities involved in Defendant Lankina's advertisement on the car were not directed at the Commonwealth of Virginia. Defendant Lankina made her advertising arrangements in Florida with a Florida resident. While her advertisements appeared at a race in Virginia, as discussed above, there is no evidence that Defendant Lankina directed her activities towards Virginia.

Since I have established that Defendant Lankina did not purposefully direct activities towards the Commonwealth of Virginia, and that the Plaintiff's claims do not stem from actions directed towards this forum, there is no need to examine whether exercising personal jurisdiction in this case would be constitutionally reasonable. *Burger King*, 417 U.S. at 476-77.

C.     Motion To Compel

The Plaintiff contends that Defendant Lankina's Motion to Dismiss with accompanying memorandum and affidavit raise a suspicion that they were not truly *pro se* and that the Defendant received legal help. The Plaintiff cited several cases in which courts addressed concerns about ghostwriting by attorneys who do not sign the filings in order to dodge potential liability for Rule 11 sanctions and yet still have those documents receive the more generous reading acorded to *pro se* filings. *See, e.g., Ellis v. Maine*, 448 F.2d 1325 (1st Cir. 1971); *Johnson v. Board of County Comm'rs for the County of Freemont*, 868 F. Supp. 1226 (D. Colo. 1994); *Laremont-Lopez v. Southeastern Tidewater Opportunity Ctr.*, 968 F. Supp. 1075, 1078

10

(E.D. Va. 1997). The Plaintiff asks that I sanction Defendant Lankina unless she discloses who assisted her with her brief.

Admittedly, Defendant Lankina's brief does raise suspicions that it may have been ghostwritten. Heretofore, Defendant Lankina has only been known to this court as an aspiring model, actress, and photographer. In her brief, she competently cites case law on the thorny issues of general and specific personal jurisdiction, even if she did mistakenly cite to Third Circuit cases instead of Fourth Circuit Cases in some places. She made legal arguments in the traditional way: stating the issue, synthesizing a rule, applying facts to the rule. While the formatting and technical errors in Defendant Lankina's brief may not win high marks in a legal writing class, overall it bespoke of some degree of legal training and sophistication.

So while suspicions are raised, the issue of whether Defendant Lankina may have received uncredited professional legal assistance in writing her brief is at best tangentially related to the substance of this litigation. Furthermore, if an attorney assisted in creating Defendant Lankina's brief, this Court has no authority to discipline that attorney, as such matters are under the exclusive jurisdiction of the Supreme Court of Florida. R. Regulating Fla. Bar 3-3.1.[1]

In any event, the Plaintiff's main concern was that an attorney who declined to sign a brief for Defendant Lankina's could take advantage of the less stringent standard in *pro se* filings without exposing the attorney to the standards of honesty required by Federal Rule of Civil

---

[1] I assume that if an attorney assisted Defendant Lankina with her brief, it was a Florida attorney. In the event that she received help from a member of another state's bar, the authority to discipline members of the state's bar always lies with that state's supreme court.

Procedure 11.  In dismissing this case for lack of personal jurisdiction, I did not need to hold the Defendant's brief to a less stringent standard.  As described above, the facts alleged in Plaintiff's Complaint, Motion, and accompanying affidavits simply did not support a finding of specific personal jurisdiction.  In supporting this decision, I did not need to rely on the information provided in Defendant Lankina's "affidavit."[2]  Rule 11 limits sanctions to "what is sufficient to deter repetition of such conduct," and this Defendant has not escaped higher scrutiny by some ruse.

Sanctioning Defendant Lankina to reveal the name of her suspected accomplice would only serve to drag out this litigation which otherwise cannot proceed due to lack of jurisdiction.  The revelation of Defendant Lankina's accomplice, if one exists, would serve no useful purpose as I lack the jurisdiction to discipline the unauthorized practice of law in Florida.  For those reasons, I deny the Plaintiff's Motion to Compel.

## V.  CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is **GRANTED**.  Plaintiff's Motion to Compel is **DENIED**.  This case is **DISMISSED FROM THE DOCKET OF THIS COURT, WITH LEAVE FOR THE PLAINTIFF TO REINSTATE THE CASE IN ORDER TO ENFORCE THE INJUNCTION**.

The Clerk is directed to send a certified copy of this Memorandum Opinion and the attached Order to all counsel of record.

---

[2]The Plaintiff questioned whether the statement attached to Defendant's motion was an affidavit as no notary's signature or seal was affixed to it.  The Plaintiff also discounted the possibility that it was a declaration made pursuant to 28 U.S.C. § 1746 because the Defendant included the phrase "duly sworn."  Regardless, I have not found it necessary to rely on any facts in the affidavit in order to rule on this motion.

12

ENTERED this 27th day of November, 2006.

                                                s/Jackson L. Kiser
                                                Senior United States District Judge